# United States District Court

FILED
JUN 12 2013
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
By _____
Deputy

___NORTHERN___ DISTRICT OF ___TEXAS___

UNITED STATES OF AMERICA

V.  **COMPLAINT**

THOMAS S. KANTZOS  CASE NUMBER: 3-13-MJ-339-BF

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___Dec. 29, 2011___ in the Northern District of Texas, defendant(s) did,

intentionally exceed authorized access to a protected computer,

in violation of Title __18__, United States Code, Section(s) __1030(a)(2)(C)__.

I further state that I am a(n) Special Agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See attached Affidavit of Special Agent Nils A. Hubert, (FBI) which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof: XX Yes   No

Signature of Complainant
NILS A. HUBERT
Special Agent, (FBI)

Sworn to before me and subscribed in my presence, on this __12__ day of __June__, 2013, at Dallas, Texas.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, Nils A. Hubert, being first duly sworn, depose and say that there is probable cause to file a criminal complaint against THOMAS S. KANTZOS. Through the use of a cooperating witness (CW), it has been determined that KANTZOS has provided law enforcement sensitive information to the CW in violation of Title 18 U.S.C. 1030(a)(2)(C), by exceeding authorized access to a protected computer.

The following facts, which support probable cause of this violation, are true and correct to the best of my knowledge and belief:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been a Special Agent for approximately 14 years. I am currently assigned to the FBI's Dallas Division, Fort Worth Resident Agency. My responsibilities include conducting investigations involving allegations of public corruption and civil rights violations. In the course of my career with the FBI, I have participated in the execution of search warrants and arrest warrants. I have personally participated in this investigation and I am thoroughly familiar with the information contained in this affidavit.

2. This affidavit is submitted for the limited purpose of showing probable cause for a criminal complaint. Rather than attempt to recount each and every fact known to me or others participating in this investigation, I have set forth only those facts that I believe are sufficient to support a probable cause finding. Where conversations or statements are related herein, they are related in substance and in part only, unless otherwise indicated.

3. The facts set forth below are based upon my personal knowledge, information communicated to me by other law enforcement officers and persons cooperating with this investigation, interviews personally conducted by myself as well as others, and other relevant information gathered during the investigation.

4. In January 2013, an individual was arrested for distributing anabolic steroids and he agreed to be a cooperating witness (CW). During interviews in which I participated, the CW admitted to routinely using and distributing anabolic steroids and human growth hormones (HGH) during the last 13 years. For the last five or six years, the CW has routinely provided anabolic steroids and HGH directly to THOMAS KANTZOS, whom the CW knows to be a City of Arlington Police Officer. On at least one occasion, the CW delivered approximately twenty HGH kits to KANTZOS while KANTZOS was on duty, wearing an Arlington Police Officer uniform, and driving an Arlington Police Department marked patrol car. According to the records of the Texas Commission on

Law Enforcement Officer Standards and Education (TCLEOSE), KANTZOS has been an Arlington Police Officer since October 1995.

5. A consent search of the CW's cellular telephones revealed the content of text messages between the CW and telephone number 817-296-XXXX, which was identified in the CW's telephone directory as being associated with "Thomas." Those text messages occurred between approximately January 31, 2012 and January 16, 2013. Telephone records reflect that KANTZOS is the subscriber for telephone number 817-296-XXXX and has been the subscriber since before January 2010.

6. A review of text messages between CW and KANTZOS obtained from the CW's cellular telephone, and information obtained during interviews I conducted with the CW, reveal that KANTZOS was familiar with the types, dosages, uses, and prices of various forms of anabolic steroids. On multiple occasions, KANTZOS solicited anabolic steroids from the CW for himself and other individuals, including friends and colleagues in the Arlington Police Department. He often collected money from the other individuals before he obtained the steroids from the CW, but on some occasions he fronted the money for the purchases. KANTZOS was aware the CW utilized the mail service to obtain and distribute anabolic steroids.

7. Based on their conversations, the CW knew KANTZOS took most of the anabolic steroids and HGH he obtained from the CW and distributed them to other Arlington Police Officers. Additionally, KANTZOS put the CW into contact with two other named Arlington Police Officers so they could obtain anabolic steroids directly from the CW.

8. A review of text messages in the CW's cellular telephone revealed that on August 2, 2012, KANTZOS texted "What kind of deca you got" and the CW responded "Qv only got couple till next order hits." KANTZOS responded "How much… Gotta a guy wanting a bottle." According to the CW, "deca" refers to the anabolic steroid Deca Durabolin, and "Qv" refers to the "Quality Vet" brand of testosterone.

9. A review of text messages in the CW's cellular telephone revealed that on September 19, 2012, KANTZOS texted "Got a couple orders" and the CW responded "Ok." KANTZOS replied with the text message "One test.. 100 Winnie 100 anavar." According to the CW, "test" refers to testosterone and Anavar and "Winnie," or Winstrol, are steroids.

10. A review of text messages in the CW's cellular telephone revealed that on January 9, 2013, KANTZOS texted the CW the message "Boy from work wants a test and a dec…"

The CW responded "Ok" and KANTZOS texted "$190 for both?" According to the CW, "dec" refers to the anabolic steroid Deca Durabolin.

11. On April 12, 2013, the CW conducted a consensually recorded meeting with KANTZOS. During their conversation, KANTZOS used his cellular telephone to text and call Officer A, who KANTZOS indicated was an Arlington Police Officer who used anabolic steroids. KANTZOS asked the CW if he recognized the names of two people who had supplied anabolic steroids to Officer A prior to their arrests. KANTZOS also asked what anabolic steroids the CW possessed when arrested and how the CW obtained them. KANTZOS explained he was trying to determine if there were any connections between Officer A's steroid supplier and the CW. KANTZOS told the CW "All our sources dried up."

12. Also during the recorded meeting on that date, KANTZOS asked the CW "Remember about two years ago I had a guy who bought 20 bottles from you?" Near the conclusion of the meeting, KANTZOS told the CW, "You'll be back in business" and "I got like five guys that are fucking 'jonesin'" (wanting to obtain steroids).

13. According to the CW, KANTZOS has provided the CW with law enforcement sensitive information that KANTZOS obtained from law enforcement databases. Access to those databases is restricted to authorized law enforcement personnel only. In each instance, the CW asked KANTZOS to query a name or a license plate for the CW's personal use.

14. The Texas Department of Public Safety confirmed that KANTZOS is authorized to access law enforcement information obtained through the Texas Crime Information Center (TCIC) and the National Crime Information Center (NCIC). In order to qualify for that access, KANTZOS received specialized training on the authorized uses of the information, as well as the potential penalties for the misuse of such information. Personal use of such information including releasing information to members of the general public is not authorized and violates Arlington Police Department policy. He can access TCIC and NCIC information utilizing the Texas Law Enforcement Telecommunication System (TLETS). TLETS is a secure computer network utilized only by law enforcement personnel. KANTZOS can access TLETS using a unique user identification and password specifically assigned to him. Patrol cars used by the Arlington Police Department are equipped with computers that allow patrol officers to use TLETS.

15. The CW stated that on a Thursday in November or December 2011, the CW saw a suspicious pickup truck parked down the street from the CW's house and a familiar looking man appeared to be looking at a laptop computer in the driver's seat. The CW asked KANTZOS to "run" the truck's license plate, because the CW planned to deliver anabolic steroids to a named Arlington Police Officer later that day and the CW was concerned about the possibility of police surveillance of his activities. KANTZOS told the CW that the vehicle was owned by Individual B, whom the CW had previously met and knew to be a police officer on a drug task force. TLETS records reflect that on Thursday, December 29, 2011, KANTZOS conducted a "Stolen Vehicle Investigative Inquiry" for the license plate of a pickup truck registered to Individual B, who is a law enforcement officer.

16. Based on the information provided by KANTZOS, the CW visually inspected his vehicle and discovered a tracking device attached to it. The CW immediately began "laying low" for three or four weeks, during which time the CW and KANTZOS talked about the tracking device and the police surveillance of the CW. A review of text messages on the CW's cellular telephone revealed that on February 16, 2012, KANTZOS texted the CW the message "Still laying low?" The CW replied with the text message "Yeah got new way of doing you still need?" KANTZOS responded "Let me ask… But (name redacted) was asking bout it too."

17. A review of text messages on the CW's cellular telephone revealed that on October 29, 2012, at approximately 11:06 a.m., the CW texted KANTZOS and asked if he would "run a plate" which the CW provided. KANTZOS responded with the message "Let me ask someone at work. In off today." At approximately 11:50 a.m. that same day, KANTZOS sent the CW a text message with an embedded photograph of a computer screen displaying the registration information for the same license plate number that the CW had requested. According to information from the computer display, the registration query was conducted at 11:48 a.m. on October 29, 2012. A check of the TLETS records revealed that on October 29, 2012, at 11:48 a.m., Individual C from the Arlington Police Department conducted a "Vehicle Registration Inquiry" of the same license plate as the CW provided to KANTZOS.

18. A review of text messages on the CW's cellular telephone revealed that on December 1, 2012, at approximately 10:27 a.m., the CW texted KANTZOS the message "What up" and KANTZOS responded with the text message "Who you want me to run." The CW replied with the name, age, and date of birth for Individual D. KANTZOS then sent the CW two embedded photographs of a computer screen displaying the driver's license information of Individual D. A check of TLETS records revealed that on December 1,

2012, at 10:30 a.m., KANTZOS of the Arlington Police Department conducted a "Driver License Inquiry" regarding Individual D.

19. A review of text messages on the CW's cellular telephone revealed that on April 24, 2013, at approximately 1:46 p.m., the CW texted KANTZOS the message "Can you run a plate for me" and KANTZOS responded with the text message "Prolly call a bud to." At approximately 2:15 p.m. that same day, the CW texted KANTZOS a license plate number. KANTZOS responded with two messages that included the vehicle registrant's name and city of residence, as well as the name of the person who insured the vehicle. A check of TLETS records revealed that on April 24, 2013, at 2:16 p.m., Individual E from the Arlington Police Department conducted a "Combination License Plate Registration Inquiry with Stolen Vehicle Inquiry" for the license plate number the CW provided to KANTZOS.

20. On June 1, 2013, at approximately 11:19 a.m., the CW texted KANTZOS the message "Hey I just pulled up at my old connections house can you run a plate on a lexis here." The CW's text message also included a license plate number. KANTZOS responded to the text "Give me a few.. I'm not in my car." At approximately 11:57 a.m., KANTZOS sent the CW a text message containing the name and city of residence of Individual F. According to the results of a vehicle registration query investigators conducted on that same license plate on April 23, 2013, the information KANTZOS provided to the CW was accurate.

21. THOMAS S. KANTZOS knew that the CW was distributing drugs in violation of state and federal law when the CW asked KANTZOS to run queries on law enforcement databases including TCIC and/or NCIC, which are contained within protected computers, and are intended for law enforcement purposes only. Instead, KANTZOS knew he was providing restricted information to someone who was not an authorized recipient, and who was also a known drug dealer, in order to aid and abet that drug dealer's illegal steroid distribution activities.

[NO FURTHER INFORMATION ON THIS PAGE]

Based on the foregoing, probable cause exists to believe that on June 1, 2013, THOMAS S. KANTZOS violated 18 U.S.C. § 1030(a)(2)(C) by exceeding authorized access to a protected computer.

_____
NILS A. HUBERT
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me on this 12 day of June, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE